We'll move to our second case, Lozman v. City of Riviera Beach. Good morning, Mr. O'Boyle. Will you please speak to us? Yes, Your Honor. Good morning. I represent the appellant, Mr. Lozman. The case before us at the District Court is a Lucas-type regulatory case. It arises from a summary judgment where granted summary judgment for the City of Riviera Beach. My concern is, is that right? Is that right for judicial review? Because ordinarily with the Lucas claim, then you have to have applied for a permit or a variance. We have to have a record about what is permitted or not permitted to determine whether the regulatory taking results and no economically beneficial use. Your Honor, actually, it is right. And there's, as the Supreme Court said in Palo Zolo, and as this court said in Ede, it is a fact-sensitive inquiry. Yeah, the problem is, though, you seem to be attacking the comprehensive plan and the ordinance and that those we have consistently held are not final decisions sufficient to satisfy the requirement. Well, the ordinance itself, 4147, which is the Special Preservation District Ordinance, when that was enacted, that became the final decision of the City. I think what's important to highlight here is that Mr. Lozman actually... I thought a general applicable ordinance, in other words, an ordinance that's applicable to a community, and here it would be the east side of Lake Worth or the homes that are non-developed that are ring around Lake Worth, is not a final decision. Where we have said an ordinance could be a final decision in cases like South Grand and AA Profiles is where the ordinance itself was specifically targeted at one property and where the owner contested the ordinance as to that particular targeted property. And this just doesn't seem like that kind of ordinance. Am I missing something? Uh, yes, Your Honor. And this is why I requested judicial notice of the variance provisions of the City of Riviera Beach about a week or so ago after receiving the court's letter, because not only do we have Mr. Lozman actually objecting to this ordinance, but I wanted to highlight to the court that he is absolutely unable to obtain... Okay, I have it in front of me. I've read it closely. Show me exactly which provision in in the ordinance on variances, so section 31-42 of the variance ordinance, you're telling me precludes, makes it impossible that he cannot even file the document and be given any sort of review. Yes, Your Honor. So if we look at section B-1, we have the mandatory criteria. Right. And specifically, I look at B-1C, which is the special privilege is not conferred. The granting of the variance of the relief requested will not confer the applicant a special privilege that is denied to other lands, buildings, or structures. Right. So here, we're in the special preservation district, which literally allows for no development whatsoever. Well, that's a criteria that he has to, the court has to find. I don't know that's a necessary condition as I read that. But even if that's the case, as I understand it, and this is part of your argument, some of these properties going back to the 50s and 60s were in fact allowed and given the ability to develop. And so there are some that have, in other words, there are other lands where a special privilege has been granted. And so that would be a factor that would actually seem to weigh in favor of you, not against you. Not in this special preservation district. The other places where there has been development or zoned. The ones that are immediately south, those are in the special preservation district. They're just existing uses. They're in the district. They ring the intercoastal, they ring the east side of Lake Worth in the same way that Mr. Lozman's property does, but those were pre-existing properties. And so they're pre-existing uses. If anything, that seems to indicate that a variance would be there. Is there any other provision that you're looking at in the variance ordinance? Yes, your honor. So I also look at 2C. So I've looked at that one also. I even have it circled and highlighted. And there, what it says is the grant of the variance, and this just goes to supplemental criteria. This isn't even the mandatory criteria, but even in the supplemental, it says the grant of the variance shall be in harmony with the general intent and purpose of the comprehensive plan. And so I'm not sure that allowing some minimal development on the 0.2 acres would be inconsistent with keeping pristine the rest of the property that is sort of the intent and purpose of the comprehensive plan. Again, I just don't see it as necessarily prohibiting. What else in this variance ordinance? Well, so your honor, I also want to point out here that the supplementary criteria is mandatory when you're asking for relief from the land development code, the zoning code. So here, the special preservation district would be asking for relief from that. Okay, I understand that. But if it's talking about the intent and purpose of the comprehensive plan, not the letter of it, but the intent and purpose of it, it seems that you can allow something, some economic development on the 0.2 acres and still have the intent and purpose, which is to keep pristine the area that's right behind it on Lake Worth and the intercoastal waterway and the estuary. Your honor, when I look at the section 31, the purpose and intent, it specifically says it has to be kept pristine in its natural state, so I don't know what. Agreed, but that's the water, that's the estuary, not the 0.2 acres that are on land that everyone concedes is on land. Your honor, actually, no, I think the special preservation district includes those 0.2 acres. Oh, no, it clearly does. But if we're looking at intent and purpose, remember, what it's saying here is, hey, we'll allow a variance of this as long as it's sort of consistent with our general understanding of what we want. That's what this is saying, and I just don't see allowing a little hut on the 0.2 acres, if that's what anyone wants, or allowing a little shack there to sell milkshakes to thirsty beachgoers, why that would in any way be inconsistent with the use that the general, the comprehensive plan was. Do you have any other points there with regard to the variance ordinance? Yes, your honor, so I also look at D1 and D2, which are, even if you meet the mandatory criteria, there is a prohibition as to how far you can go. Okay, so I've read it, tell me which part of that you think prohibits a variance in this instance? Okay, so first, D1 is disjunctive, so if you meet either test, you are prohibited. So when we look at D1 subsection one, it says permits that are not generally or by special exemption permitted in zoning district. But they have been, and that's the issue. So there are these pre-existing uses that are there, and others, as you know, the Chillingworth and the Taylor litigation, those they were allowed specific exemptions from otherwise what was then prohibited by the comprehensive plan, and that there are all these other uses for others that are in the exactly same situated property and took from the same deed that your client did that have used below. So how is it not that it's or special exemption permitted? In addition, the 4147 ordinance specifically allows special exemptions that are judicially recognized. And so why is that not also carved out from, accepted from the prohibition? Okay, so your honor, the special exemption portion of 31, I'm sorry, section three, ordinance 4147 literally says special exemptions, none. So it doesn't allow any special exemptions. And we have to go back to the record. But my, my understanding is that we know the council, we know that, that there are allowed judicially recognized uses that that's what that's talking about there. No, there's out from the ordinance. So this is, this is section B, the special exemptions where it literally says none. So the special exceptions referred to in the code here are the special exemptions allowed under the ordinance, which say it just says special exemption permitted in the zoning district involved. The zoning district is, is governed by 4147. And that allows for the judicially created exceptions. Tell me what else in this ordinance is, do you think prohibits? So, so your honor, so yes, there is a savings cause for judicially determined vested rights, but I think it's important to highlight here because these are fact specific inquiries that Mr. Bozeman actually sued to get judicially determined rights to fill in bulkhead. And this was lawsuit was in 2021. This isn't very highlighted in the brief, but it is in the record. And he didn't, and he didn't, and he didn't go through the exhaustion requirements. And so it was dismissed without prejudice. And that is because the comprehensive land use plan was changed in December 1st, 2021, before he even got his ruling, the city went in and they and they changed it from one from judicially created rights to you have to have a minimum of 20 acres. So Mr. Bozeman. So let's, so let's, so let's go to that. That goes to D2 in the variance ordinance. But, but here the prohibition only goes to those density requirements as defined in the applicable sections of the land development code. 4147 does not have the one to 20 ratio that you're talking about. No, it does not. It is the land use the vote, which there's no density requirement in the land development code that would prohibit a variance. Your honor. That is, that is correct. And what I'm showing is the city's conduct was in a sense to put Mr. Bozeman in check before he could get those judicially determined rights. But let's go back to, he just missed his lawsuit without prejudice for not exhausted. I mean, that, that if he exhausted and it had gone through, then maybe we could say that he's already done that, but he hasn't done as a matter of law. Because under their comprehensive land use plan, they changed the goalpost on, but let me, let me, let me talk about, because I know I'm running out of time. Let me talk about D2 as well. So D2 says that you can't give any variances for anything by expressly or by implication that are prohibited by the terms of the land development ordinance and subject zoning district, non-conforming uses in the city zoning district. Basically you cannot change the nature of this land. This land is a special preservation. And if you're- No, that's not what, that's not what D2 says. D2 says you can't change the density limit on it, but as we pointed out, there's a judicially recognized carve out for that with no density limit in the land development code. And so I don't see why that would prohibit him from at least seeking a variance. And here's the reason I'm asking these questions. It's not to be, it's not to be difficult in any way, but we recognized in the South, in the South Grand case, what it really takes in order to get a variance, I'm sorry, what it takes to get the futility requirement in, I think it's footnote 12. And there, what we said is at the end that Alabama law still does not have a process through which variances can change zoning ordinances. In other words, Alabama didn't foreclosed all options for variances of zoning ordinances. Here, not only does Florida law not prohibit it, but we have an ordinance that specifically contemplates it. And that that ordinance, at least as best as I can tell, it might make it difficult, but it doesn't completely narrow, it doesn't completely shut it down. And so I guess I go back to Chief Judge Pryor's question is how, where's the final decision here that we can look to for review? Okay, so there's, it is the combination of the ordinances, the lack of the ability of variance. I know the court might disagree but that is the argument. The change of the comprehensive plan right before there was a potential order from the court to establish judicial, judicially established rights. And I just as Kennedy I believe said, you don't have to push paper just for pushing paper's sake. If it is abundantly clear that there's no ability to get any relief, then you don't have to pursue that. I've said my time is up. You've saved a few minutes for rebuttal, Mr. O'Boyle, and you were answering a lot of questions, so you're good. Ms. Petrick? May it please the court, I'm Amy Petrick on behalf of Appalachia City of Rivera Beach. As the court is pointing out, this case is not right because it does not meet the final decision requirements of the case law that's been discussed. That really wasn't the argument you made in your brief, but because we asked that question, you have to concede that your view is that it's not justiciable. Well, your honor, I would like to explain how the two concepts of whether or not meeting the final decision requirement and the argument that has been set forth by the appellant, which is that it took the zoning code in order to, in essence, finalize their facial challenge to the comprehensive plan. I'd like to explain how those two things live together. It's one thing to say you need to apply for a permit at least once to determine how this set of regulations applies to you, and it's another thing to say that if your argument, which is what the argument of the appellant was, is that the regulatory scheme on its face without application is confiscatory, then that action happened when the comprehensive plan was adopted. It didn't happen when the zoning ordinance was put into place because the zoning ordinance added nothing to the regulatory scheme. It was simply a conforming document. I know, but counsel, it's the same question that I asked your opposing counsel, which is if the ordinance is generally applicable, certainly the comprehensive plan is generally applicable, and our case law seems to suggest that generally applicable ordinances, zoning restrictions, zoning variances, are not final decisions. I don't see how the clock could start at the comprehensive plan if it's not a final decision, which you seem to say it's not, and how it could start at the ordinance if it's not a final decision. It only starts at the final decision. That's the whole point of the statute of limitations argument. In other words, the statute of limitation argument and rightness really are two sides of the same coin. They begin at the same point, right? Yes, your honor. The city agrees with that. The city made that argument initially in the motion to dismiss. I know, and that's what Chief Judge Pryor is asking, is you've sort of taken a 360, and I think even your opposing counsel pointed out when you got to here, and I get that because summary judgment sort of went differently than you may have anticipated it going, but the bottom line is we're here. We have to deal with justiciability issues, and rightness question deals with when a final judgment starts, and that's what starts the clock, and so the only question we have or we're asking right now is what is the final decision? Is there one? So the final decision about what can happen on this property, you know, because this is Lucas, and it's categorical, so the idea is that nothing can happen that preserves an economic... You don't have a final decision, right? That's right, because in order to establish that for this particular parcel, what you would need to do is determine whether or not the savings clauses that exist both within the comprehensive plan and in the ordinance afford some relief for the parcel from the general limitations that exist. If the intended use that you're looking at, which is what was set forth in the complaint, is this idea of filling and subdividing the submerged land? Their point is, though, they don't really dispute that so much. I mean, he disputes it a little bit, but I think his real point here is once you put together the comprehensive plan and how it's been amended, the ordinance and how it's been read, and the variance requirements of the city, it seems impossible to him that he's ever going to actually get a variance. That, as I understand, is his argument. How do you address that point? When you combine all those things, a 20 to 1 density limit in the comprehensive plan, a state law requiring that the comprehensive plan outweigh or take precedence over anything in an ordinance, and then a variance requirement that seems to suggest that you can't do anything with regard to density limitations, how does that not equal that there's nothing that can be done here? So, the argument of the appellant in this case has always been that under his TIF deed, he has right to fill bulkhead and subdivide. If that is true, and he meets the requirements of the savings clause by getting a judicial determination, as others have received. The comprehensive plan says a judicial determination still requires a 1 to 20 limit, and at best, I know you dispute how much property he has, but let's take his version of it. He has eight acres. That still wouldn't meet the requirements of the judicial carve-out in the comprehensive plan, right? But what's important about that is if he had the ability to fill his property and create new upland, then the terms of the special preservation of future land use designation may no longer be appropriate for him. The only way for him to do that is to go through the judicial determination process, and the comprehensive plan says that the density limit in the special preservation future land use designation after it's been filled, he can come in and say, now that it's filled, now we have new property, I want the city to consider what the appropriate future land use designation is, because the special preservation... But doesn't the variance, that would have to be done under variance, and doesn't the variance ordinance say that it cannot do anything regarding density limits? That isn't a variance process. That is the comprehensive plan amendment process, which applicants go through all the time to be re-designated to a different future land use map designation, because something about their property has made something more applicable, and building new upland would make it more applicable to be considered for something else. Okay, show me where in state law or in city ordinance that there's a process, an official process by which someone can seek a change to the comprehensive plan. So, I don't have the entire zoning code in front of me, but the ability to seek a future land use map plan re-designation exists in every jurisdiction. It's a feature of Chapter 163 that an applicant can come in and say, please re-designate me under the future land use map. I'm going to ask you, I hope the Chief Judge will allow this, but I'm going to ask that you file a supplemental letter after oral argument today telling us exactly which provision of state law and the ordinance that allows for amendments to a comprehensive plan that would be available for Mr. Lozman, in this case, if he got a permit to fill. I'd be happy to do that. What we'll do is we'll give each of you an opportunity to file. Well, what we'll do, is we'll give you an opportunity to file that letter within a week. Is a week enough time? Oh, yes. And then we'll give Mr. O'Boyle a week to respond, make it a letter brief, no more than three pages. Thank you. I'm sorry, I'm just writing. Yep, I understand. Okay. What other avenues, if any, does Mr. Lozman have to get any sort of relief he's seeking? It depends on what he's asking to do. Now, there are uses such as a dock, a platform for non-motorized boats. I know, but to do what he's asking, which is either put a houseboat in the back, fill in the land, or just to build a shack on the 0.2 acres that he has. So with respect to the houseboat, it is unclear what the existing future land use designation and the existing zoning code have to say about that, because you'd have to know what the nature of the structure is and how it's being affixed to the land. The comprehensive plan typically deals with the development of land, and so that's why you see things that are addressed within it, like docks. I thought there's a city prohibition on houseboats, is there not? So there is an ordinance 4148, which was not challenged in this case, but has become a topic of discussion. And even in ordinance 4148, there is an exemption that talks about if you have the applicable state and federal permits for a private houseboat, a private mooring facility for a floating structure. Is that why the Corps, him applying to the Corps, the Corps of Engineers for a permit would be important because of their jurisdiction over the submerged land? That's right. And there has been discussion, at least in the record, that there have been discussions with the Army Corps about whether and to what extent a floating home or floating structure could be permitted on this property. If you do that under ordinance 4148, there is exemption for private mooring fields and private floating structures. How that applies to the appellant's property has never been evaluated in this case, because it is undisputed that the appellant has never asked the city for permission either to locate a floating structure on the property for a home or to establish any kind of dock or mooring facility that would facilitate that. And in the record, you will see the affidavit of the development director who explained that the temporary electrical, the reason why that was turned off is because the city was asking, what is it that you're attempting to facilitate here? And they were told a future dock, and there was some verbal conversation about a home, there was no application. And so the city's position has been establish the primary use, and then we will know what we can do with respect to the electrical wires, with respect to the dock, with respect to the fence. All of those things happen after you establish the primary use, which has never been applied for. Counsel, I want to go back to the comprehensive designation of this particular property. I thought it was FDEP's position in litigation with the city that essentially said, no, we will not allow any designation other than special preservation district. Wasn't that the result of the back and forth from 1989 to 1981 and essentially the consent or stipulation that was entered into by the city? So it was the function of a conversation between a now defunct agency called DCA, the Department of Community Affairs, which is now the Department of Economic Opportunity here in Florida. It was not a function of DEP, but yes, the Department of Community Affairs under a prior iteration of its rules and regulations, what has been referred to by the growth management community as 9J5, that is the administrative rule that was in effect at the time. They said, you cannot do these things. You need to say no to residential unless you have this We as DCA will not approve anything other than special preservation district, right? That's right. And since that time, both the administrative rules that govern the comprehensive plan process and the state statutes that govern how those things are evaluated by the agency, and the agency itself has had a massive overhaul. And so the factors that were being applied at time are not the same substantively as what exists in the law and the administrative code today. So someone coming in to say, hey, I want to be redesignated, or I would like for you to consider a text amendment to add a use that I think is appropriate. Does the city see itself bound by that litigation by the consent decree in that litigation with DCA? The city is free to entertain future comprehensive plan amendments that are something that relied on the current best available data and analysis. They could do that. And the Department of Economic Opportunity could consider that under today's law and not 9J5. Under the law, the current state of the law, as you understand it, is there any possible way that either the city and or DEO would approve a residential designation for any part of the isthmus between the Atlantic Ocean and the, or I guess the land that's on the east side of the Lake Worth Estuary? So it's impossible to say for certain. You're in this business. Tell me, is it possible for it to be done legally? I think that there is a place for a discussion about the extent to which residential floating structures fit within the comprehensive plan designation. The comprehensive plan is entirely silent at the moment on that issue because it wasn't something that was part of the planning discussion back in the day. So I believe there is room for- What about building a house on the dry part of the property? Not fill or anything like that, but building a house on the dry part. So there are structural difficulties with this particular parcel because it's only 20 feet wide in its dry place and it's covered in mangroves and sea grape, which have environmental limitations of their own. So I think you're talking about a significant challenge to develop the upland, not because of necessarily the future land use designation, which- You're not going to be the deciding person anyway. That's right. What does it matter what you think? That's right. You're not I mean, all this is hypothetical, correct? That's correct, Your Honor. Right, right. And you don't purport to really try to let us know what is or is not feasible right now. That's correct. You don't have the authority to say about that. You're correct. It would be speculative at this moment to say exactly what could or could not be facilitated. I simply wanted to- Because we don't have a final decision. We don't have an- I mean, I just don't think we- We don't need to go down that road, do we? I don't think we do. Do you have authority to approve anything? Are you asking me personally or- Yeah, yeah, yeah. Oh, no. You're all I have. Thank you. Thank you, Your Honor. Ms. Patrick, do you have anything else? No, Your Honor. Thank you very much. We would respectfully request that the court affirm the summary judgment in favor of the- Yeah. Well, if it's not justiciable, then what we will have to do, would we not, is to vacate and remand with instructions to dismiss as not being right, right? We agree, Your Honor. Okay. Mr. O'Boyle, you've saved three minutes. And would the dismissal be without prejudice, I assume? That's what- Yeah, yeah. Because, yeah, any- Okay. Lack of jurisdiction would be without prejudice. Yeah. Okay. So- And, Your Honor, is what I would request, if the court is going to go that way, although I've argued against it, is with our supplemental briefing, which the court talked about, which is what exactly needs to happen in order for this to be right? Because our position, again, is it is right. And one of the things I wanted to point out- All we can tell you, Mr. O'Boyle, if we decide that it is not right, is why. And, you know, there's a limit to what I can say about what you can do in the future, and will do in the future, and how that will unfold. I think you can appreciate that, but we can certainly explain, if we think that it is not right, we can certainly explain why we think that. Yes, Your Honor. I didn't want to go so far as to ask for an advisory opinion, but yes. So, one of the things I wanted to focus back on is, this court has, to my knowledge, not held that an ordinance, unless it is applied to a specific property, as in the Fort Lauderdale case, or the Grandview case, has resulted in a final decision. But I'd like to point the court to the Supreme Court's words in Palo Alto, where Justice Kennedy in the Supreme Court said, what are we really trying to understand with rightness? Is we're trying to understand if there's any uncertainty as to the land's permitted use. So, I put forth to this court- I've heard a lot of uncertainty this morning. Well, Your Honor, I don't think that the court's prior precedent in terms of a single ordinance geared at a single specific property is necessarily the test. I feel like that's too restrictive. I believe that if you do have a class of properties and there is no uncertainty as to how that is going to be applied, then their rightness is now no longer an issue. Because what we're really looking at is the finality. What we're looking at is the court's ability to determine how far regulation goes. And once they know that, then they can make their determinations as to whether a Lucas-type taking, you know, a Penn Central-type taking has occurred. One of the things I do want to correct is, I did go back and briefly just look at the record, the houses on Pine Point Road are not within the Special Preservation District. Special Preservation District is a group of properties that are all along Lake Worth where there is no development. So my contention would be that there aren't any other properties that are developed that are in the Special Preservation District. And I'd like to go back again and assert that in the variance provision D-2, that you may not permit any use that is expressly or by implication prohibited in terms of land development ordinance. And here, this land ordinance says you're only allowed to do very limited things. Build a fishing dock and look at your property. But except for the saving clause? Yes, except for the saving clause, which would require somebody to go to another court outside of the city and go establish rights through something that is completely outside the city's control. Okay, I think we understand your case, Mr. Boyle, and we're going to move now to the third case. Thank you. Thank you.